1  JOHN F. MURTHA, ESQ.
   **Nevada Bar No. 835**
2  SETH J. ADAMS, ESQ.
   **Nevada Bar No. 11034**
3  WOODBURN AND WEDGE
   Sierra Plaza
4  6100 Neil Road, Ste. 500
   Post Office Box 2311
5  Reno, Nevada  89505
6  Telephone:  775-688-3000
   Facsimile  :  775-688-3088
7  jmurtha@woodburnandwedge.com
   sjadams@woodburnandwedge.com
8
   Attorneys for Equity Security Holders
9  Murray Bockhold and G.R. Dawson
   Holdings
10

11              UNITED STATES BANKRUPTCY COURT

12                    DISTRICT OF NEVADA

13                          * * *

14  In re:                          Case No.  BK-13-51496-GWZ
15                                  Chapter    11
    GRYPHON GOLD CORPORATION,
16                                  **MOTION FOR ORDER UNSEALING**
         Debtor.                    **DOCUMENT FILED UNDER SEAL**
17
18                                  **Hearing Date :  03/01/2016**
                                    **Hearing Time:  2:00 P.M.**
19                                  **Est. Time    :   15 Minutes**
                                    **Set By       :   David Lindersmith**
20  _____/

21  TO: THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

22        Equity  security  holders  Murray  Bockhold  and  G.R.  Dawson  ("Bockhold-
23  Dawson"), by and through their counsel Woodburn and Wedge, hereby move this Court
24  for an order unsealing a document previously filed under seal.  Specifically, on April 28,
25  2015, Bockhold-Dawson filed an Ex Parte Motion for Order Authorizing Filing of Paper
26  Under Seal (11 U.S.C. §107, FRBP 9018) (Docket No. 359) ("Sealing Motion") relating
27
28

1  to an Initial Report prepared by PricewaterhouseCoopers, LLP ("PwC") ("PwC Report").[1]

2  In the Sealing Motion Bockhold-Dawson indicated it was being file was being filed "out

3  of an abundance of caution" because the PwC Report "may contain references to

4  materials protected from public disclosure" pursuant to the terms of a Non-Disclosure

5  Agreement between the Trustee and Borealis Mining Company, LLC ("BMC"), to which

6  Bockhold-Dawson agreed to be bound.  The Court granted the Sealing Motion and

7  authorized the PwC Report to be filed under seal (Docket No. 361).  The PwC Report

8  has been filed with the Court under seal.

9

10       By this Motion, Bockhold-Dawson seeks entry of an order unsealing the PwC

11  Report and releasing the materials contained in the report from the restrictions of the

12  Non-Disclosure Agreement for two reasons.  First, if the information in the PwC Report

13  is not subject to protection under the provisions of 11 USC § 107, it should not be

14  protected from disclosure to others.  Bockhold-Dawson should be able to use any

15  information not protected by 11 USC § 107 for any purposes, but since the PwC Report

16  is sealed in its entirety an order unsealing the report is necessary to avoid unintended

17  violations of the Sealing Order.  Second, to the extent information in the PwC Report is

18  arguably subject to protection under 11 USC § 107, valid and substantial reasons

19

20  support an order unsealing that information as well.

21       This Motion is based upon the provisions of 11 U.S.C. § 107, FRBP 9014 and

22  9018, and Local Rule 9018, and is based upon the following facts and circumstances.

23

24       1.    This case was commenced on July 29, 2013, by way of a Voluntary

25  Petition for Relief under Chapter 11 of the Bankruptcy Code (*Title 11 USC*) (*Docket No.*

26  *1*) and an order for relief was entered that day.

27

28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

---

[1] Normally a report that is the subject matter of a motion would be filed as an exhibit to the motion for the Court's convenience, but since the PwC Report is filed under seal it is not possible to attach a copy of it to this motion.

2.    On December 13, 2013, the Court entered an order approving the U.S. Trustee's appointment of Christina W. Lovato as Chapter 11 Trustee ("Trustee") (*Docket No. 75*).

3.    On March 26, 2015, the Court entered an Order Following Status Conference (*Docket No. 339*) which provided that Bockhold-Dawson were permitted to "cause an independent third party audit of the Debtor's and Borealis' books and records." The order also provided that "[a]ny person . . . receiving confidential information from Borealis shall sign a copy of [a] Confidentiality and Non-Disclosure Agreement…" that was attached to the Order. *See, Order Following Status Conference (Docket 339).* For the Court's reference, a copy of the Order Following Status Conference including a copy of the Non-Disclosure Agreement ("NDA") is attached hereto as Exhibit 1.

4.    Confidential Information for purposes of the NDA is defined in ¶2.2 as "information . . . or tangible things that qualify for protection under Federal Rule of Bankruptcy Procedure 9018 or 11 U.S.C. §107."

5.    Paragraph 8.2 of the NDA provides that "[n]othing in this Agreement abridges the right of any person to seek its modification by the Court in the future."

6.    The NDA was entered into by and between the Trustee and BMC and it was intended to protect confidential information relating to the operation of the Borealis Mine. In May 2015 counsel for BMC (Laura Grainier, Esq.) advised that due to economic constraints, operations were suspended at the Borealis Mine.

7.    The PwC Report should be unsealed because, for the most part, it does not contain any information that:  (1) is confidential under the provisions of the NDA; or (2) would be considered confidential information under the provisions of 11 USC § 107.

8.    A careful review of the PwC Report reveals that it generally does not contain any confidential information obtained from BMC or any information that is not

otherwise available to the public.  For example, the PwC Report makes references to certain documents produced during the Trustee's investigation and reviewed by PwC, but the PwC Report only indicates the documents were reviewed by PwC without specifically discussing the information itself.  Examples of this situation appear in ¶¶ 54 and 68 and Appendix B to the PwC Report.  As another example, the PwC Report references information obtained from the Debtor's press releases and its pre-petition SEC filings.  *See, e.g. Appendix D and the references to SEC Reports in Appendix G of the PwC Report.*

9.    The PwC Report Summarizes various agreements among the Debtor, Waterton and BMC, which agreements should have been in the Debtor's books and records or were attached (at least in part) to Waterton's Proof of Claim (Claim No. 12).

10.    The PwC Report does not contain any financial information that was not otherwise discussed in other pleadings in this case or discussed in open court.  The one exception, perhaps, is Appendix M to the PwC Report.  It contains a chart (in a balance sheet format) comparing BMC's trial balance as of January 31, 2013, to a valuation done by Waterton in connection with the Debt for Equity Swap.  The information is fairly general and certainly does not put BMC or its business at risk from competitors if the PwC Report were unsealed.  Furthermore, the information in Appendix M is the same information as should have been reported in the Debtor's SEC filings.  Finally, Appendix M is but a snap shot of BMC as of January 31, 2013; it provides no details regarding the Borealis Mine or its operation; it is accurate as of a moment in time; the moment in time was nearly three years ago; and its relevance, if any, is lessened by reason of the closure of the mine.

11.    Protected information for purposes of 11 U.S.C. § 107 are: (1) trade secrets, (2) confidential research, development or commercial information; and (3)

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-4-

scandalous or defamatory matter.  At most, the information contained in the PwC Report is a snapshot of the Debtor's financial condition at a single point in time which merely reflects the same information that is otherwise available for public inspection by a corporation's shareholders in any event.  There is simply no reason to protect the confidential information in the PwC Report (at most, Appendix M) from public disclosure.

12.    There exists a strong presumption under the common law that the public has a right of access to judicial proceedings and records.  *See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)* ("[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.") (citations omitted).  Section 107 of the Bankruptcy Code codifies this common law presumption.  *See 11 USC § 107(a)* ("Except as provided in subsections (b) and (c) of this section and subject to section 112, a paper filed in an case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge.")*; In re Handy Andy Home Improvement Ctrs., Inc., 199 B.R. 376, 381 (Bankr. N.D. Ill. 1996)* ("[P]apers filed in a case under Title 11 or in the Bankruptcy Court dockets are public examination and are open to examination.")*; see also In re Joyce, 399 B.R. 382, 386 n.2 (Bankr. D. Del. 2009)* ("[Section] 107 specifically addresses the public's access to judicial records, thereby codifying the public's broad common law right to access judicial records.").

13.    For information to be entitled to protection under Section 107(b)(1), a court must conclude that "disclosure of [the] information [must] reasonably be expected to cause the entity commercial injury." *In re Alterra Healthcare Corp., 353 B.R. 66, 75-76 (Bankr. D. Del. 2006) (quoting In re Northstar Energy, Inc., 315 B.R. 425, 429 (Bankr. E.D. Tex. 2004)).*  In addition the court must find that the information "is so critical to the operations of the entity seeking the protective order that its disclosure will unfairly benefit

1    that entity's competitors." *In re Alterra Healthcare Corp., 353 B.R. at 75-76 (citing In re*
2    *Barney's, Inc., 201 B.R. 703, 708-09 (Bankr. S.D.N.Y. 1996)).*

3        *14.*    In demonstrating that an exception applies under Bankruptcy Code
4    Section 107(b), the sealing proponent bears the burden of proof in showing that the
5    interest in secrecy outweighs the presumption in favor of access. *See, In re Food Mgmt.*
6    *Grp., LLC, 359 B.R. at 561; see also, In re Alterra Healthcare Corp., 353 B.R. at 75*
7    (rejecting arguments asserted by debtor that sought to maintain confidentiality of
8    settlement agreements under Section 107(b)).
9

10       15.    During hearings before the Court, the Court admonished Bockhold-
11   Dawson to pursue their non-bankruptcy rights and remedies as shareholders of the
12   Debtor. Bockhold-Dawson had no luck convincing regulatory agencies to investigate
13   Waterton Global Value, LP's ("Waterton") transactions with the Debtor during the
14   pendency of this case. Since the Court ordered that the case should be dismissed,
15   Bockhold-Dawson have been able to get the Investment Industry Regulatory
16   Organization of Canada ("IIROC") to review the Debtors trading activity and its financial
17   dealings with Waterton to determine whether an investigation is warranted. *See, letter*
18   *from IIROC (Doug Cope, Manager, Investigations) to the undersigned dated January*
19   *15, 2016 ("IIROC Letter"), attached hereto as Exhibit 2.* In the IIROC Letter, Mr. Cope
20   states "I believe [the PwC Report] will assist IIROC in its assessment of this matter and
21   request that you provide me a copy . . . if you are legally able to do so."
22
23   ///
24   ///
25   ///
26   ///
27
28

1    For these reasons, Bockhold-Dawson respectfully request that this Court declare

2  that the information contained in the PwC Report is not protected information for

3  purposes of 11 U.S.C §107 and order that the PwC Report be unsealed.

4    DATED this ____ day of January, 2016.

5                                    WOODBURN AND WEDGE

6

7                                    BY _____

8                                        John F. Murtha, Esq.,
                                        Seth J. Adams, Esq.
9                                        Attorneys for Bockhold-Dawson

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2

3          I certify that I am an employee of the law firm of Woodburn and Wedge, and that

4   on the 20 day of January, 2016, I caused the foregoing document to be delivered to

5   the parties entitled to notice in this action by:

6   _____          placing a true copy thereof in a sealed, stamped envelope with the
                          United States Postal Service at Reno, Nevada
7

8   _____          personal delivery

9   _____          email

10      X                electronic filing - ECF

11  _____          Federal Express or other overnight delivery

12  as follows:

13
                                   Jeffrey L. Hartman, Esq.
14                                 jlh@bankruptcyreno.com

15                                 Courtney Miller O'Mara, Esq.
                                   comara@fclaw.com
16

17                                 Gregory F. Wilson, Esq.
                                   gfw@gfwilsonlaw.com
18
                                   Laura K. Granier, Esq.
19                                 laura.granier@dgslaw.com

20

21                                 Denise Sercani
22

23

24

25

26

27

28

# EXHIBIT 1

_Bruce T Beesley_

Honorable Bruce T. Beesley
United States Bankruptcy Judge

Entered on Docket
March 26, 2015

JOHN F. MURTHA, ESQ.
**Nevada Bar No. 835**
W. CHRIS WICKER, ESQ.
**Nevada Bar No. 1037**
WOODBURN AND WEDGE
Sierra Plaza
6100 Neil Road, Ste. 500
P.O. Box 2311
Reno, Nevada 89505
Telephone : (775) 688-3000
Fax: (775) 688-3088
jmurtha@woodburnandwedge.com
cwicker@woodburnandwedge.com

Attorneys for Equity Security Holders
Murray Bockhold and G. R. Dawson
Holdings, Ltd.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

* * *

In re

GRYPHON GOLD CORPORATION,

Debtor.

_____/

Case No. BK-13-51496- gwz
Chapter 11

**ORDER FOLLOWING STATUS CONFERENCE**

Hearing Date: February 6, 2015
Hearing Time: 2:00 p.m.

This case came before the Court on February 6, 2015, for a status conference in connection with the following matters:

1.   Motion to Convert Case to Chapter 7 or Dismiss filed November 21, 2013, by Waterton Global Value, LP ("Waterton") (Docket No. 41) ("Motion to Convert"); and

2.   Motion for Order Authorizing Trustee to Release Documents Obtained During her Investigation filed on December 12, 2014, by Equity Security Holders Murray Bockhold and G. R. Dawson Holdings ("Bockhold-Dawson Group") (Docket No. 268) ("Document Motion").

At an earlier status conference held on January 16, 2015, regarding the Motions the Court directed the Bockhold-Dawson Group to provide evidence of their ability to fund a plan of reorganization for the Debtor.  The Bockhold-Dawson Group filed the following documents in advance of the hearing:

3.   Notice of Filing Declaration Regarding Ability to Fund Plan of Reorganization signed by Ian Dawson and Bruce Dawson of G. R. Dawson Holdings, Ltd. filed on February 4, 2015 (Docket No. 306) ("Dawson Declaration"); and

4.   Notice of Filing Declaration Regarding Ability to Fund Plan of Reorganization (CIBC) signed by Murray Bockhold filed on February 5, 2015 (Docket No. 309) ("CIBC Declaration").

Prior to the hearing the following documents were filed:

5.   Wateron's and Borealis' Status Update to the Court Regarding Funding for Gryphon Reorganization Plan and Motion to Convert or Dismiss filed by Waterton and Borealis Mining Company, LLC ("Borealis") filed on February 5, 2015 (Docket No. 307) ("Update"); and

6.   Bockhold-Dawson Group's Response to Wateron's and Borealis' Status Update to the Court Regarding Funding for Gryphon Reorganization Plan and Motion to Convert or Dismiss filed by Waterton and Borealis Mining Company, LLC ("Borealis") filed on February 5, 2015 (Docket No. 310) ("Response").

Appearances were made at the hearing by John F. Murtha, Esq. and W. Chris Wicker, Esq. on behalf of the Bockhold-Dawson Group; Laura K. Granier, Esq. and

2

1
2
3
Courtney Miller O'Mara, Esq. on behalf of Waterton and Borealis; and Gregory F. Wilson, Esq. on behalf of Trustee Christina Lovato.

4
5
Testimony was taken at the hearing from Murray Bockhold and Bruce Dawson, with Mr. Dawson testifying by telephone.

6
7
8
9
10
11
12
NOW, THEREFORE, based on: (1) the Court's consideration of the arguments previously advanced regarding the Motion to Convert and the Document Motion; (2) the Court's review and consideration of the Dawson Declaration and the CIBC Declaration; (3) the Court's review and consideration of the Update and the Response; and (4) the Court's consideration of testimony and evidence admitted at the hearing held on February 6, 2015, it is hereby ORDERED as follows:

13
14
15
A.    A status hearing on the Bockhold-Dawson Group's due diligence and a continued hearing on the Motion to Convert and the Document Motion will be held on **March 20, 2015, at 2:00 p.m.**

16
17
18
19
20
21
22
23
24
25
26
27
B.    Prior to the next hearing, the Bockhold-Dawson Group is authorized to cause an independent third party audit of the Debtor's and Borealis' books and records to be commenced by a Certified Accountant or Certified Public Accountant of its choice ("Auditor").  The audit shall be of the period from January 1, 2012, to present (the "Audit Period") and shall focus on the Debtor's and Borealis' assets, liabilities and operations as is reasonably necessary to allow the Bockhold-Dawson Group to complete the due diligence it needs to propose a plan of reorganization for the Debtor.  At the continued hearing on March 20, 2015, the Bockhold-Dawson Group should be prepared to update the Court on the progress of the audit, whether any additional time is needed for the audit, if so, how much, and whether the

28
3

1
2
3
Bockhold-Dawson Group remains interested in financing a plan of reorganization for the Debtor.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
        C.      Waterton and Borealis shall fully cooperate with the Bockhold-Dawson Group and the Auditor in connection with the audit including, but not limited to: (1) allowing access to such books and records regarding the Waterton claim and the operation of the Mine as the Auditor may reasonably request with respect to the Audit Period; and (2) allowing reasonable access to the Mine by: (a) Murray Bockhold; (b) a representative of CIBC other than Murray Bockhold; (c) Ian Dawson; (d) Bruce Dawson; (e) John Welsh, Robert Casinelli and Lari Marlow (the Bockhold-Dawson Group's mining consultants); (f) the Bockhold-Dawson Group's legal counsel; and (g) the Auditor and such other members of the Auditor's staff as may be necessary to conduct the audit.  The parties shall cooperate and attempt to arrange for a single site visit at a reasonable time acceptable to the parties and which will not be unreasonably disruptive of the normal operations of the Mine.    Should the Auditor reasonably require more than one meeting at the Mine, Borealis shall cooperate with the Auditor in arranging and allowing such subsequent visits as may be necessary to timely complete the audit.

21
22
23
        D.      Any person attending the site visit or receiving confidential information from Borealis shall sign a copy of Exhibit A to the Confidentiality and Non-Disclosure Agreement attached hereto as Exhibit 1.

24
/ / /
25
/ / /
26
27
/ / /
28

4

1
2

      E.    All of the costs associated with the audit shall be borne by the
Bockhold-Dawson Group.

3
4
5

Prepared by:

6
7
8
9

John F. Murtha, Esq.
W. Chris Wicker, Esq.
WOODBURN AND WEDGE
Attorneys for Equity Security Holders
Murray Bockhold and G. R. Dawson
Holdings

10
11

Approved/Disapproved by:

12

Gregory F. Wilson, Esq.
GREGORY F. WILSON AND ASSOCIATES, P.C.

13
14

Attorneys for Trustee Christine M. Lovato

15

    See Next Page

16
17

~~Approved~~/Disapproved by:

18
19
20

Courtney Miller O'Mara, Esq.
FENNEMORE CRAIG, P.C.
Attorneys for Waterton Global Value, L.P. and
Borealis Mining Company, LLC

21
22

    Courtney Miller O'Mara

23

~~Approved~~/Disapproved by:

24
25
26

Laura K. Granier, Esq.
DAVIS GRAHAM AND STUBBS, LLP
Attorneys for Waterton Global Value, L.P. and
Borealis Mining Company, LLC

27

    Laura K. Granier

28

5

E.    All of the costs associated with the audit shall be borne by the
Bockhold-Dawson Group.

Prepared by:

John F. Murtha, Esq.
W. Chris Wicker, Esq.
WOODBURN AND WEDGE
Attorneys for Equity Security Holders
Murray Bockhold and G. R. Dawson
Holdings

Approved/Disapproved by:

Gregory F. Wilson, Esq.
GREGORY F. WILSON AND ASSOCIATES, P.C.

Attorneys for Trustee Christine M. Lovato

Approved/Disapproved by:

Courtney Miller O'Mara, Esq.
FENNEMORE CRAIG, P.C.
Attorneys for Waterton Global Value, L.P. and
Borealis Mining Company, LLC

Approved/Disapproved by:

Laura K. Granier, Esq.
DAVIS GRAHAM AND STUBBS, LLP
Attorneys for Waterton Global Value, L.P. and
Borealis Mining Company, LLC

5

## ALTERNATIVE METHOD RE: RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows: (check one):

_____ The Court waived the requirements of approval under LR 9021.

_____ This is a chapter 7 or 13 case, and either with the motion, or at the hearing, I have delivered a copy of the proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Counsel who approved the order:        _____
                                       _____
                                       _____

Counsel who disapproved the order:     _____
                                       _____
                                       _____

Counsel who did not respond:           _____
                                       _____
                                       _____

__X__ This is a chapter 9, 11 or 15 case, and I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Counsel who approved the order:

Gregory F. Wilson, Esq.                Attorney for Trustee
1495 Ridgeview Dr., Ste. 120
Reno, NV 89519


Counsel who disapproved the order:

Laura Granier, Esq.                    Attorney for Waterton Global
1 E. Liberty St. #600                  Value and Borealis Mining
Reno, NV 89501

Courtney Miller O'Mara, Esq.           Attorney for Waterton Global
300 E. Second St. #1510                Value and Borealis Mining
Reno, NV 89501

_____ I certify that there were no oppositions or appearances at the hearing.

                                    ___/s/ John F. Murtha_____
                                    John F. Murtha, Esq.
                    ###

# EXHIBIT 1

## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

1   This Agreement ("Agreement") is entered into by and among Christina Lovato, Chapter 11

2   Trustee for Gryphon Gold Corporation in the case entitled In re Gryphon Gold Corporation, Case

3   Number 13-51496 in the United States Bankruptcy Court, District of Nevada (the "Gryphon Gold

4   Case") and Borealis Mining Company, LLC ("Borealis"), and their respective undersigned counsel.

5   Each Party to this Agreement agrees to be bound by the terms set forth herein.

6   1.    **PURPOSES AND LIMITATIONS**

7        The disclosure of information in the Gryphon Gold Case may involve production of

8   confidential, proprietary, or private information for which protection from public disclosure may be

9   warranted. The Parties acknowledge that this Agreement does not confer blanket protections on all

10  disclosures or responses to discovery and that the protection it affords from public disclosure and use

11  extends only to the limited information or items that are entitled to confidential treatment as set forth

12  herein.

13  2.    **DEFINITIONS**

14       2.1    Challenging Party:  a Party that challenges the designation of information or items

15  under this Agreement.

16       2.2    "CONFIDENTIAL" Information or Items:  information (regardless of how it is

17  generated, stored or maintained) or tangible things that qualify for protection under Federal Rule of

18  Bankruptcy Procedure 9018  or 11 U.S.C. § 107.

19       2.3    Counsel:  Outside counsel of record and in-house counsel for a Party to this

20  Agreement and their support staff.

21       2.4    Designating Party:  a Party that designates information or items that it produces in

22  disclosures or in responses to discovery as "CONFIDENTIAL."

23       2.5    Disclosure or Discovery Material:  all items or information, regardless of the medium

24  or manner in which it is generated, stored, or maintained (including, among other things, testimony,

25  transcripts, and tangible things), that are produced or generated in disclosures or responses to

26  discovery in the Gryphon Gold Case by a Party.

27       2.6    Expert:  a person with specialized knowledge or experience in a matter pertinent to

1

1  the Gryphon Gold Case who has been retained by a Party or its counsel to serve as an expert witness

2  or as a consultant in the Gryphon Gold Case.

3       2.7     Party: any person or entity signing this Agreement, including any such entity's

4  officers, directors, employees, consultants, retained experts, and counsel.

5       2.8     Parties: Each Party to this Agreement, collectively.

6       2.9     Producing Party: a Party that produces Disclosure or Discovery Material in this

7  action.

8       2.10    Professional Vendors: persons or entities that provide litigation support services

9  (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing,

10 storing, or retrieving data in any form or medium) and their employees and subcontractors.

11      2.11    Protected Material: any Disclosure or Discovery Material that is designated as

12 "CONFIDENTIAL."

13      2.12    Receiving Party: a Party that receives Disclosure or Discovery Material from a

14 Producing Party.

15 3.     **DESIGNATING PROTECTED MATERIAL**

16      3.1     Exercise of Restraint and Care in Designating Material for Protection. Each Party that

17 designates information or items for protection as "CONFIDENTIAL" under this Agreement must

18 take care to limit any such designation to specific material that qualifies under the appropriate

19 standards. The Designating Party must designate for protection only those pages of material,

20 documents, items, or written communications that qualify – so that other portions of the material,

21 documents, items, or communications for which protection is not warranted are not swept

22 unjustifiably within the ambit of this Agreement.

23      If it comes to a Designating Party's attention that information or items that it designated for

24 protection do not qualify for protection, that Designating Party must promptly notify all other Parties

25 that it withdraws the mistaken designation.

26      3.2     Manner and Timing of Designations. Except as otherwise provided in this

27 Agreement or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for

28 protection under this Agreement must be clearly so designated before the material is disclosed or

2

1   produced. Designations shall be as follows unless the Parties amend this Paragraph 3.2 by written

2   stipulation signed by the Parties.

3           (a) for information in documentary form (e.g., paper or electronic documents, but

4   excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party

5   affix the legend "CONFIDENTIAL" to each page that contains protected material. (b) for

6   information produced in some form other than documentary and for any other tangible items, that the

7   Producing Party affix in a prominent place on the exterior of the container or containers in which the

8   information or item is stored the legend "CONFIDENTIAL." If only a portion or portions of the

9   information or item warrant protection, the Producing Party, to the extent practicable, shall identify

10  the protected portion(s).

11          3.3     Inadvertent Failures to Designate. If timely corrected, an inadvertent failure to

12  designate qualified information or items does not, standing alone, waive the Designating Party's

13  right to secure protection under this Agreement for such material. Upon timely correction of a

14  designation, the Receiving Party must make reasonable efforts to assure that the material is treated in

15  accordance with the provisions of this Agreement.

16  4.      **CHALLENGING CONFIDENTIALITY DESIGNATIONS**

17          4.1     Timing of Challenges. Any Party may challenge a designation of confidentiality at

18  any time. Challenges must be made in good faith and not for any improper purposes.

19          4.2     Meet and Confer. The Challenging Party shall initiate a meet and confer process by

20  providing written notice of the designations it is challenging and describing the basis for each

21  challenge ("First Notice"). First Notices shall state they are made pursuant to this paragraph of this

22  Agreement. First Notices shall be by email to all of the Designating Party's counsel of record in the

23  Gryphon Gold Case. The Challenging and Designating Parties' counsel shall then attempt to resolve

24  the challenges in good faith by meeting in person or discussing the challenge(s) in a telephone call.

25          4.3     Judicial Intervention.

26          (a) if the challenges have not been resolved by the Parties within 14 calendar days of

27  the First Notice being emailed to the Designating Party, the Challenging Party shall provide written

28  notice of the designations that it continues to challenge ("Second Notice"). Second Notices shall be

1    by email to the Designating Party's counsel.

2          (b) if the Designating Party wishes to preserve its challenged designations of

3    confidentiality set out in the Second Notice, no later than 21 calendar days after emailing of the

4    Second Notice, the Designating Party must file and serve a motion to retain its challenged

5    designations, obtain a protective order to maintain the original designation, or to establish other

6    confidentiality protections. If the Designating Party fails to timely file and serve such a motion, the

7    confidentiality designation of each challenged designation shall be deemed waived and of no force

8    or effect.

9          (c) each such motion to retain confidentiality must be accompanied by a competent

10   declaration affirming that the movant has complied with the meet and confer requirements imposed

11   in the preceding paragraphs.

12         (d) the burden of persuasion in any such challenge proceeding shall be on the

13   Designating Party.

14         (e) unless the Designating Party has waived the confidentiality designation by failing

15   to file a motion to retain confidentiality as described above, all Parties shall continue to afford the

16   material in question the level of protection to which it is entitled under the Producing Party's

17   designation until the Bankruptcy Court enters its order on any motion regarding same.

18   5.    **ACCESS TO AND USE OF PROTECTED MATERIAL**

19       5.1    Basic Principles. A Receiving Party may use Protected Material that is disclosed or

20   produced by another Party for purposes of investigation, resolving the Gryphon Gold Case, or in the

21   prosecution, defense or settlement of any future adversary proceedings related to the Gryphon Gold

22   Case. Such Protected Material may be disclosed only to the categories of persons and under the

23   conditions described in this Agreement. When the Gryphon Gold Case and any related cases have

24   been terminated, a Receiving Party must comply with the provisions for final disposition stated

25   herein. The undertakings and obligations of the Trustee under this Agreement shall not apply to any

26   information that is disclosed in a separate printed publication available to the public, or is otherwise

27   in the public domain through no action or fault of the Trustee.

28       5.2    Disclosure of "CONFIDENTIAL" Information or Items. Unless otherwise ordered by

4

1  the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any

2  information or item designated "CONFIDENTIAL" only to:

3      (a) the Receiving Party's outside counsel of record in the Gryphon Gold Case, as well as

4  employees of said outside counsel of record to whom it is reasonably necessary to disclose the

5  information;

6      (b) the officers, directors, and employees (including in-house counsel) of the Receiving

7  Party to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and

8  Agreement to Be Bound" (Exhibit A);

9      (c) Experts (as defined herein) of the Receiving Party to whom disclosure is reasonably

10  necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

11      (c) percipient witnesses to whom disclosure is reasonably necessary as part of any

12  investigation related to the Gryphon Gold Case and who have signed the "Acknowledgment and

13  Agreement to Be Bound" (Exhibit A);

14      (d) the Court and its personnel, subject to Section 8.4, below;

15      (e) court reporters and their staff, and Professional Vendors to whom disclosure is

16  reasonably necessary, and who have signed the "Acknowledgment and Agreement to Be Bound"

17  (Exhibit A);

18      (f) during their depositions, witnesses to whom disclosure is reasonably necessary and

19  who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A), unless otherwise

20  agreed by the Designating Party or ordered by the Court. Pages of transcribed deposition testimony

21  or exhibits to depositions that reveal Protected Material must be separately bound by the court

22  reporter and may not be disclosed to anyone except as permitted under this Agreement.

23      (g) the author or recipient of a document containing the information or a custodian or

24  other person who otherwise possessed or knew the information.

25  6.    **UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL**

26      If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected

27  Material to any person or in any circumstance not authorized under this Agreement, the Receiving

28  Party must immediately (a) notify in writing the Designating Party of the unauthorized disclosures,

1   (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the

2   person or persons to whom unauthorized disclosures were made of all the terms of this Order, and

3   (d) request such person or persons to execute the "Acknowledgment and Agreement to Be Bound"

4   that is attached hereto as Exhibit A.

5   7.   **INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED**

6       **MATERIAL**

7           When a Producing Party gives notice to Receiving Parties that certain inadvertently produced

8   material is subject to a claim of privilege or other protection, the obligations of the Receiving Parties

9   are those set forth in Federal Rule of Civil Procedure 26(b)(5)(B). This provision is not intended to

10  modify whatever procedure may be established in an e-discovery order that provides for production

11  without prior privilege review.

12  8.   **MISCELLANEOUS**

13          8.1   Governing Law. This Agreement is governed by and will be construed in accordance

14  with the laws of the State of Nevada, and the United States Bankruptcy Court with jurisdiction over

15  the Gryphon Gold Case shall be the exclusive forum to resolve any dispute hereunder.

16          8.2   Right to Further Relief. Nothing in this Agreement abridges the right of any person to

17  seek its modification by the Court in the future.

18          8.3   Right to Assert Other Objections. By stipulating to this Agreement no Party waives

19  any right it otherwise would have to object to disclosing or producing any information or item on

20  any ground not addressed in this Agreement. Similarly, no Party waives any right to object on any

21  ground to use in evidence of any of the material covered by this Agreement.

22          8.4   Filing Protected Material. A Party may not file in the public record any Protected

23  Material without written permission from the Designating Party or a court order secured after

24  appropriate notice to all interested persons. A Party that seeks to file under seal any Protected

25  Material must comply with applicable Local Rules. Protected Material may only be filed under seal

26  pursuant to a court order authorizing the sealing of the specific Protected Material at issue. If a

27  Receiving Party's request to file Protected Material under seal is denied by the Court, then the

28  Receiving Party may re-file the information in the public record unless otherwise instructed by the

1    Court.

2    9.    **FINAL DISPOSITION**

3    Within 90 days after the final disposition of the Gryphon Gold Case and all related cases,

4    each Receiving Party must return all Protected Material to the Producing Party or destroy such

5    material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

6    pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

7    correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant

8    and expert work product, even if such materials contain Protected Material. Any such archival copies

9    that contain or constitute Protected Material remain subject to this Agreement for a period of three

10   (3) years.

11   IT IS SO AGREED.

12

| CHRISTINA LOVATO | HARTMAN & HARTMAN |
|---|---|
| Dated: 5/27/14 | Dated:_____ |
| By:_____ | By:_____ |
| Christina Lovato | Jeffrey L. Hartman, Esq. |
| Chapter 11 Trustee of Gryphon Gold Corporation | Bankruptcy Counsel for Chapter 11 Trustee Christina Lovato |
| | GREGORY F. WILSON & ASSOCIATES |
| | Dated:_____ |
| | By:_____ |
| | Gregory F. Wilson, Esq. |
| | Jeffrey S. Einsohn, Esq. |
| | Special Counsel for Chapter 11 Trustee Christina Lovato |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1   Court.

2   9.   **FINAL DISPOSITION**

3        Within 90 days after the final disposition of the Gryphon Gold Case and all related cases,

4   each Receiving Party must return all Protected Material to the Producing Party or destroy such

5   material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

6   pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

7   correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant

8   and expert work product, even if such materials contain Protected Material. Any such archival copies

9   that contain or constitute Protected Material remain subject to this Agreement for a period of three

10  (3) years.

11  IT IS SO AGREED.

12

13  | CHRISTINA LOVATO | HARTMAN & HARTMAN |
    |---|---|
14  | Dated: _____ | Dated: 1/20/2014 |
15  | | By: _____ |
16  | By: _____<br>Christina Lovato | Jeffrey L. Hartman, Esq. |
17  | Chapter 11 Trustee of Gryphon Gold<br>Corporation | Bankruptcy Counsel for Chapter 11 Trustee<br>Christina Lovato |
18  | | GREGORY F. WILSON & ASSOCIATES |
19  | | Dated: _____ |
20  | | |
21  | | By: _____<br>Gregory F. Wilson, Esq. |
22  | | Jeffrey S. Einsohn, Esq. |
23  | | Special Counsel for Chapter 11 Trustee Christina |
24  | | Lovato |

25

26

27

28

                                    7

1    Court.

2    9.    **FINAL DISPOSITION**

3        Within 90 days after the final disposition of the Gryphon Gold Case and all related cases,

4    each Receiving Party must return all Protected Material to the Producing Party or destroy such

5    material. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all

6    pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda,

7    correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant

8    and expert work product, even if such materials contain Protected Material. Any such archival copies

9    that contain or constitute Protected Material remain subject to this Agreement for a period of three

10    (3) years.

11    IT IS SO AGREED.

12

| CHRISTINA LOVATO | HARTMAN & HARTMAN |
|---|---|
| Dated:_____ | Dated:_____ |
| By:_____<br>Christina Lovato | By:_____<br>Jeffrey L. Hartman, Esq. |
| Chapter 11 Trustee of Gryphon Gold<br>Corporation | Bankruptcy Counsel for Chapter 11 Trustee<br>Christina Lovato |
|  | **GREGORY F. WILSON & ASSOCIATES**<br>Dated: 05.28.14<br><br>By:_____<br>Gregory F. Wilson, Esq.<br>Jeffrey S. Einsohn, Esq.<br><br>Special Counsel for Chapter 11 Trustee Christina<br>Lovato |

7

| BOREALIS MINING COMPANY, LLC | LIONEL SAWYER & COLLINS |
|---|---|
| Dated: MAY 15, 2014 | Dated: May 15, 2014 |
| By: _[signature]_ | By: _[signature]_ |
| | Jennifer A. Smith, Esq. |
| | Courtney Miller O'Mara, Esq. |
| It's MANAGER | Attorneys for Borealis Mining Company, LLC |

8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ [print or type full name], of _____

_____ [print or type full address],

declare under penalty of perjury that I have read in its entirety and understand this Confidentiality

and Non-disclosure Agreement. I agree to comply with and to be bound by all the terms of this

Agreement and I understand and acknowledge that failure to so comply could expose me to

monetary penalties.

    I will not disclose in any manner any information or item that is subject to this Agreement to

any person or entity except in strict compliance with the Agreement.

    I submit to the jurisdiction of the United States Bankruptcy Court for the District of Nevada

for any purpose relating to the Gryphon Gold Case or enforcement of this Agreement.


Date: _____

City and State where sworn and signed: _____


Printed name: _____


Signature: _____

9

EXHIBIT 2



January 15, 2015

Mr. John F. Murtha
Woodburn and Wedge
Sierra Plaza
6100 Neil Road, Ste. 500
P.O. Box 2311
Reno, Nevada 89505

Re: IIROC File CA 2016-0313

Dear Mr. Murtha,

Further to our telephone conversation yesterday, this letter will confirm that I am an Investigations Manager within the Enforcement Department (Enforcement) of the Investment Industry Regulatory Organization of Canada (IIROC). IIROC is a national self-regulatory organization within the securities industry in Canada. It writes rules that set high regulatory and investment standards for its registrants and dealer member firms (dealers). It proactively conducts compliance audits of its dealers' financial, business and trading conduct practices. IIROC also conducts market surveillance and trading review analysis of its dealers to ensure trading is carried out in accordance with the Universal Market Integrity Rules (UMIR) and applicable provincial securities law.

Enforcement is responsible for investigating possible dealer or marketplace misconduct by its dealers, approved persons, and other market participants. Through enforcement action, IIROC can initiate disciplinary proceedings which may result in penalties including fines, suspensions and permanent bans or terminations for individuals and dealers.

IIROC is currently reviewing the trading activity of Gryphon Gold Corporation (Gryphon), formerly listed on the Toronto Stock Exchange (TSE), and its financial dealings with Waterton Global Value L.P. to determine whether an investigation is warranted. I have spoken with Mr. Robert Sandy who prepared a PwC forensic report for the Gryphon Bankruptcy hearing and understand this report is under seal by the United States Bankruptcy Court, District of Nevada. I believe this report will assist IIROC in its assessment of this matter and request that you provide me a copy of this report if you are legally able to do so.

Thank you for your kind assistance.

Regards,

Doug Cope
Manager, Investigations
(416) 943-6926

Investment Industry Regulatory
Organization of Canada

Organisme canadien de
réglementation du commerce
des valeurs mobilières

121 King St. West, Suite 2000
Toronto, ON  M5H 3T9
Tel 416-364-6133
Fax 416-364-0753
www.iiroc.ca